IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZURN INDUSTRIES, LLC, <br> as Successor in Interest to <br> Zurn Industries, Inc., <br><br> Plaintiff, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, <br> individually and as successor in interest <br> to Northbrook Excess and Surplus <br> Insurance Company (formerly <br> Northbrook Insurance Company), *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:18-cv-299-SPB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION REGARDING MOTION FILED AT ECF NO. 447

**Susan Paradise Baxter, United States District Judge**

Pending before the Court is a motion (ECF No. 447) by Plaintiffs Zurn Industries, LLC for partial summary judgment relative to Count V of the Amended Cross-Claim, Counterclaim and Third Party Complaint filed by Defendants First State Insurance Company and New England Insurance Company (collectively, "Hartford") at ECF No. 175, ¶62, and Count III of the Counterclaims and Crossclaims filed by Defendants American Home Assurance Company and Granite State Insurance Company (collectively "AIG") at ECF No. 188, ¶18. These claims seek a declaration from this Court as to the appropriate proration of Zurn's defense costs and a declaration as to the "respective" share each insurer owes. For the reasons that follow, this motion will be denied without prejudice.

1

I.  **BACKGROUND**

This motion concerns the following five insurance policies:

(i) Aetna1 Policy No. 01 XN 673 WCA for the period December 17, 1974 to December 17, 1977 ("Aetna 1974-1977"), for which Defendant Travelers Casualty and Surety Company ("Travelers") is now responsible;

(ii) Aetna Policy No. 01 XN 5183 WCA for the period April 1, 1985 to April 1, 1986 ("Aetna 1985"), for which Defendant Travelers, again is responsible;

(iii) Royal Policy No. RED 102439 for the period April 1, 1983 to April 1, 1984 ("Royal 1983"), for which Defendant First State Insurance Company ("First State") is responsible;

(iv) New England Policy No. NE00057 for the period April 1, 1984 to April 1, 1985 ("New England 1984"), for which Defendant New England Insurance Company ("New England") is responsible; and

(v) Granite State Policy No. 6485-6210 for the period April 1, 1985 to April 1, 1986 ("Granite State 1985"), for which Defendant Granite State Insurance Company ("Granite State") is responsible.

Zurn contends that each of the foregoing policies have been triggered by virtue of the exhaustion of underlying policies. Zurn also notes that each of the policies provide coverage for Zurn's defense costs. The latter point is not in dispute.

In its motion for summary judgment,[1] Zurn argues that Travelers, Granite State, First State, and New England have breached their defense obligations in that they "individually and

---

[1] Under Federal Rule of Civil Procedure 56(a), an award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if a reasonable jury could find for the non-moving party; a factual dispute is "material" if it will affect the outcome of the trial under the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party must support its position by citing to "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] ... admissions, interrogatory answers, or other materials ...." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In conducting a Rule 56 analysis, the court must construe the record in the light most favorable to the non-moving party while drawing all reasonable inferences in that party's favor. *Bowers v. NCAA*, 475 F.3d 524, 535 (3d Cir. 2007).

collectively refuse to pay Zurn's defense costs in full, notwithstanding that each has a joint and several duty to do so." ECF No. 447 at 1 (citing *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 44, 626 A.2d 502, 510 (1993); *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1451 (3d Cir. 1996)). Zurn posits that the insurers would be entitled to apportion the costs among themselves if they agreed on an allocation methodology. *Id.* But according to Zurn, they have failed to reach agreement and instead, dispute the percentage each of the other insurers owes. As a result, Zurn argues, "none is entitled to an order prorating defense costs." *Id.*

Travelers responds that the claims at issue were asserted by Hartford and AIG, not Travelers, and -- for that reason alone, Zurn's motion must be denied insofar as it is asserted against Travelers. Travelers further argues that, because Zurn engaged in a "decades-long" course of conduct whereby its insurers paid a pro-rata share of defense costs, Zurn is now precluded from seeking an "all sums" allocation. To the extend that Zurn is not estopped or otherwise precluded from obtaining "all sums" coverage, Travelers argues that Zurn has not complied with the mandates of *J.H. France*, because it has tendered its defense to multiple insurance companies pursuant to various policies, instead of selected a singular policy from which to obtain coverage.

Like Travelers, Hartford (on behalf of First State and New England) argues that Zurn cannot insist on an "all-sums" approach to allocation because it has already chosen to allocate coverage for its defense costs "as broadly as possible" through prior cost-sharing arrangements. *See* ECF No. 452 at 2 (citing *GenCorp, Inc. v. AIU Ins. Co.*, 297 F. Supp. 2d 995, 1008 (N.D. Ohio 2003), *aff'd*, 138 F. App'x 732 (6th Cir. 2005)). Hartford states that it has agreed to pay negotiated pro-rata shares of at least 27.4% of Zurn's defense costs for claims covered by the Royal 1983 and/or New England 1984 policies and, since November 2023, has paid 33.35% of

3

such costs. Hartford posits that Zurn has changed course and is now seeking an "all sums" allocation because it has a dispute with Travelers and Granite State over the proper allocation of defense costs relative to Zurn's 1985 quota-share policies with those companies. To the extent Zurn is not barred from seeking an "all sums" allocation, Hartford argues that Zurn must do so by selecting a particular insurer to defend it on an "all sums" basis; instead, Hartford argues, Zurn is improperly (and illogically) asking the Court to reject the insurers' request for a court declaration as to the share of defense costs that each insurance company should ultimately bear.

Granite State, like the other insurers, disputes that it has violated any contractual obligation owed to Zurn. It too argues that Zurn has thus far made only a "blanket" tender to its insurers without selecting a particular insurer or policy (including the Granite State 1985 quota share policy) to cover its defense costs. Granite State asserts that it funded Zurn's defense and indemnity costs from September 2022 until April 6, 2023, when its policy (No. SCLD-80-93353) covering the period April 1, 1977 to April 1, 1978 was exhausted; at that point, the AIG Insurers handed over control of Zurn's defense to Travelers and Hartford, because the policies of those insurers (namely, the Aetna 1974-1977 Policy, the Royal 1983 Policy, and the New England 1984 Policy) remain available to fund Zurn's defense and indemnity claims. Granite State contends that Zurn has never selected the Granite State 1985 Policy for defense and indemnity coverage relative to claims that would trigger coverage under other, earlier policies.[2] It claims this is because Granite State 1985 is a quota-share policy wherein four different insurance companies participate in providing a $20 million layer of coverage, including the now insolvent

---

[2] As for any claims that were covered *only* by the Granite State 1985 quota-share policy, Granite State asserts that it has never declined to pay Zurn's defense and indemnity costs on those claims. This would apply to cases where the date of the claimant's first alleged exposure occurred between April 1, 1985 and April 1, 1986 -- *i.e.,* the quota-share policy period.

4

company Integrity, which was responsible for a $3 million policy. According to Granite State, the insolvency of Integrity means that, if Zurn were to tender a particular claim to Granite State 1985 for defense and indemnity coverage, Granite State could exercise its right to settle the claim, and "Zurn would then be required to stand in for the $3 million Integrity share [that is now] unavailable from the $20 million quota-share layer -- that is, for 15% of each such settlement." ECF No. 455-2 at 7. Thus, to the extent there is presently an insurance "shortfall," Granite State maintains it is the result of the coverage hole in the 1985 quota-share policy that was created by Integrity's insolvency. Granite State asserts that the parties were addressing this issue when Zurn abandoned mediation efforts and filed this motion. It denies that Zurn's insurers have been "unable to agree" regarding the conduct of Zurn's defense but, even if that is the case, Granite State argues that, at most, this would mean that Zurn is now entitled to select one particular policy (not multiple policies) for its defense coverage. Granite State suggests that Zurn should return to mediation and then, if mediation fails, its claim requesting a declaration regarding the parties' respective allocable shares of defense costs will be ripe for motions practice and adjudication.

## II.     DISCUSSION

Zurn's motion implicates the principles set forth in *J.H. France Refractories Co. v. Allstate Ins. Co.*, 626 A.2d 502, 510 (Pa. 1993). In that case, the Pennsylvania Supreme Court adopted the "multiple trigger" theory of liability in asbestos exposure cases, whereby "every insurer which was on the risk at any time during the development of a claimant's asbestos-related disease has an obligation to indemnify" the insured. 626 A.2d at 507. Having adopted that theory, the court then considered the proper method for allocating liability where more than one insurer was on the risk at one time or another during the development of a claimant's

disease. *Id.* Similar to this case, the insured (J.H. France) was covered during relevant times by multiple general comprehensive liability policies that obligated the insurer to pay "*all sums* which the Insured shall become legally obligated to pay as damages because of bodily injury...." *Id.* (emphasis in the original). In addition, the policies defined an "occurrence" to include "continuous or repeated exposure to conditions which result in bodily injury." *Id.* at 508. Based on the policy language, the court ruled that "each insurer which was on the risk during the development of an asbestosis-related disease is a primary insurer" and "must bear potential liability for the entire claim." *Id.* at 508. That being the case, the insured was "free to select the policy or policies under which it is to be indemnified." *Id.* Also,

> [w]hen the policy limits of a given insurer are exhausted, [the insured] is entitled to seek indemnification from any of the remaining insurers which was on the risk during the development of the disease. Any policy in effect during the period from exposure through manifestation must indemnify the insured until its coverage is exhausted. . . .

*Id.* at 509. The court noted that its conclusion

> [did] not alter the rules of contribution or the provisions of "other insurance" clauses in the applicable policies. There is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under "other insurance" clauses or under the equitable doctrine of contribution.

*Id.*

An additional question concerned how to allocate the insurers' duty to defend when liability was triggered under more than one policy. The relevant policy language gave each company "the right and duty to defend any suit against the insured" until the policy limits were exhausted. 626 A.2d at 510. The court concluded that:

> The defense of a claim is a right, as well as a duty, falling upon the insurer. In order to effectuate that right, we hold that the selection of the insurer or insurers to undertake a defense is to be made by the insurers. In the event that the insurers are unable to agree as to the conduct of the defense, then [the insured] shall be entitled to select an insurer.

6

*Id.*

In this case, Hartford and Travelers have suggested that Zurn is precluded from seeking "all sums" coverage from its insurers because of prior cost-sharing arrangements among multiple insurers. As support for their position, they cite *GenCorp, Inc. v. AIU Ins. Co.*, 297 F. Supp. 2d 995, 1006-08 (N.D. Ohio 2003), *aff'd*, 138 F. App'x 732 (6th Cir. 2005). In that case, the plaintiff entered into a settlement agreement with its primary insurers on a pro rata basis, thereby "allocat[ing] the liability it accrued during any policy period as broadly as possible among all primary policies in effect during that period." 297 F. Supp. 2d at 1008. The district court concluded that the settlements precluded the excess insurers from seeking contribution from GenCorp's primary insurers, because the latter had no remaining liability to the insured. *Id.* at 1007. As a result, the court ruled that GenCorp could not "decide to allocate its liability to one policy or to one policy year" among its excess insurance carriers "because this would be contrary to the settlements it has reached." *Id.* at 1007-08.

The Court declines to follow the holding of *GenCorp* as it relates to the present dispute. Although the Sixth Circuit Court of appeals affirmed the district court's ruling in *GenCorp*, the decision "is of dubious value" as its reasoning has been criticized and rejected by numerous courts utilizing the "all sums" allocation approach. *Hopeman Brothers, Inc. v. Continental Cas. Co.*, 307 F. Supp. 3d 433, 447-48 (E.D. Va. 2018); *accord Westport Ins. Corp. v. Appleton Papers Inc.*, 787 N.W.2d 894, ¶¶ 31, 76 (Wis. Ct. App. 2010) (court indicating that it did "not find [*GenCorp*] useful"; affirming the trial court's conclusion that the policyholder's "prior settlements of insurance policies in various years ha[d] no bearing on [its] right now to select triggered policies on a vertical, by-year basis"); *Dana Cos., LLC v. Am. Emps. Ins. Co.*, No. 49D14–1012–PL–053501, slip op. at ¶ 39, 2013 WL 12202034 (Ind. Super. Ct. May 8, 2013)

7

(describing *GenCorp* as "an outlier opinion that wrongly interprets the meaning of Ohio's 'all sums' scope of coverage"); *Massachusetts Elec. Co. v. Commercial Union Ins. Co.*, No. 99-00467B, 2005 WL 3489874, *2 (Mass. Super. Oct. 25, 2005) (noting that *GenCorp* is inconsistent with "all sums" allocation). The Court finds that *GenCorp* provides little guidance as to the proper application of Pennsylvania law in this case.

Nor does the Court agree that Zurn is otherwise precluded from seeking an "all sums" allocation based on principles of estoppel or waiver. The Court's review of the limited record on this point does not reveal "clear, precise and unequivocal evidence" of an inducement and justifiable reliance for purposes of applying equitable estoppel principles. *See Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503-04 (Pa. 1983). Nor does the record before the Court evidence Zurn's "voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver [Zurn] would have enjoyed." *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1223 (Pa. Super. Ct. 1989). In short, the Court perceives no basis for concluding that Zurn is precluded from seeking an "all sums" allocation of its defense and indemnity costs, to the extent the terms of the policies in question are otherwise consistent with that approach.

The parties appear to disagree concerning whether Zurn must tender its defense to a singular insurer under a singular policy, as the Defendants suggest, or whether it may call upon more than one insurer to defend its claims. *J.H. France* contemplates that the insured "should be free to select the policy *or policies* under which it is to be indemnified," 626 A.2d at 508 (emphasis added), and further states that "the selection of the insurer *or insurers* to undertake a defense is to be made by the insurers" in the first instance. *Id*. at 510 (emphasis added). The court's reference to "policies" and "insurers" in the plural suggests that it is not incumbent upon

8

the insured to identify a singular insurer or policy for indemnification and defense purposes; accordingly, the Court sees no reason why Zurn could not call upon multiple insurers to defend its asbestos lawsuits under applicable triggered policies. Of course, in the event that the insurers cannot agree among themselves[3] concerning the conduct of the defense, Zurn retains the ultimate right to select the defending insurer. 626 A.3d at 510.

All that said, it does not necessarily follow that Zurn is entitled to the relief it now seeks. In the claims that are the subject of Zurn's motion, Hartford and AIG essentially seek a declaration from this Court concerning the respective share of defense costs to be borne by the parties.[4] Even if Zurn is correct that it is entitled to pursue an "all sums" approach relative to its defense costs, the insurers still maintain the right to seek contribution from each other pursuant to contractual and equitable principles. *See J.H. France*, 626 A.2d at 509 ("There is no bar against an insurer obtaining a share of indemnification or defense costs from other insurers under

---

[3] This point also appears to be in dispute: that is, the parties disagree about whether the insurers disagree regarding the conduct of Zurn's defense. As discussed further below, the Court will schedule a telephonic conference, by separate order, to address this and other issues.

[4] Count V of Hartford's Cross-Claim, Counterclaim and Third-Party Complaint states:

> If Hartford and the other Insurers are found to have obligations for defense costs incurred in connection with the Underlying Lawsuits, then Hartford seeks a judicial declaration of Hartford's and the other Insurers' respective allocable shares, if any, of the defense costs incurred in the Underlying Lawsuits.

ECF No. 175, ¶62.

> Count III of the AIG Insurers' Counterclaim and Crossclaims states:

> If Answering Defendants, other Defendants and/or Zurn are found to have obligations for defense and/or defense costs incurred in connection with the Asbestos Suits, then Answering Defendants seek a judicial declaration of the parties' respective allocable shares of such defense and/or defense costs.

ECF No. 188, ¶18.

'other insurance' clauses or under the equitable doctrine of contribution."). On the basis of the present record, Zurn's motion for summary judgment is not well-taken.

It also appears that the true crux of the parties' dispute centers around the limited funds available under the 1985 quota share policies and, specifically, whether Zurn must account for any shortfall in defense funds that are attributable to the Integrity or Lexington policies.[5] Zurn denies that it has any responsibility to self-fund those portions, and it contends that the other insurers have essentially breached their contractual obligations by arguing otherwise. To the extent the parties disagree about whether Zurn bears any responsibility for its losses relative to the 1985 quota share policies, the Court cannot resolve that dispute at this time, as the matter has not been adequately briefed and the record has not been sufficiently developed. Additionally, the Court perceives that there is a disputed issue of fact as to whether Zurn requested defense or indemnification under the Granite State 1985 Policy.

For all of the above-stated reasons, the Court finds that Zurn's motion for partial summary judgment is not well-taken and must be denied. However, the Court will schedule a telephonic conference in an effort to address the parties' current impasse and, if necessary, establish a schedule for additional pretrial motions practice.

*Susan Paradise Baxter*
Susan Paradise Baxter
United States District Judge

---

[5] As noted, the now insolvent Integrity issued a $3 million policy as part of the $20 million quota-share excess insurance policy. Lexington issued a $2 million policy as part of the quota-share policies; however, Lexington apparently denies that its policy covers defense costs and, in any event, it has not been joined in this litigation.

10